**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

| | | |
|---|---|---|
| TIANJIN MAGNESIUM INTERNATIONAL CO., LTD., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 25-00002 |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

Paul Thornton
Attorney
Office of Chief Counsel
For Trade Enforcement & Compliance
Department of Commerce

KYLE S. BECKRICH
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-9322
Email:  Kyle.Beckrich@usdoj.gov

August 5, 2025

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................. ii

STATEMENT PURSUANT TO RULE 56.2. ............................................................... 1

I.      The Administrative Determination Under Review ............................................. 1

II.     Issues Presented For Review ............................................................................. 2

STATEMENT OF FACTS ............................................................................................ 2

SUMMARY OF ARGUMENT ..................................................................................... 6

ARGUMENT ................................................................................................................. 7

I.      Standard Of Review ........................................................................................... 7

II.     Legal Framework For Surrogate Value Selections ........................................... 8

III.    Commerce's Selection Of Türkiye As The Primary Surrogate Country Is Supported By
        Substantial Evidence And Otherwise In Accordance With Law ...................... 10

        A.      Türkiye Is Economically Comparable To China ................................... 10

        B.      Türkiye Is A Significant Producer Of Comparable Merchandise ......... 12

        C.      Tianjin Magnesium's Data Quality Arguments Do Not Warrant Relief ........ 14

IV.     Commerce's Decision To Reject Bulgaria As The Primary Surrogate Country Is
        Supported By Substantial Evidence And Otherwise In Accordance With Law ........ 18

        CONCLUSION .................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Ashley Furniture Indus., LLC v. United States,*
  607 F. Supp. 3d 1210 (Ct. Int'l Trade 2022) ........................................................ 15

*Atl. Sugar, Ltd. v. United States,*
  744 F.2d 1556 (Fed. Cir. 1984) ........................................................ 7

*Best Mattresses International Company Limited v. United States,*
  622 F. Supp. 3d 1347 (Ct. Int'l Trade 2023) ........................................................ 15

*Ceramica Regiomontana, S.A. v. United States,*
  810 F.2d 1137 (Fed. Cir. 1987) ........................................................ 8

*Clearon Corp. v. United States,*
  38 C.I.T. 1122, 2014 WL 3643332 (Ct. Intl. Trade 2014) ................................................ 11, 12

*Consol. Edison Co. v. NLRB,*
  305 U.S. 197 (1938) ........................................................ 7

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607 (1966) ........................................................ 7

*Fastener Co. v. United States,*
  11 F. Supp. 3d 1326 ........................................................ 9

*Goldlink Indus. Co. v. United States,*
  431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ........................................................ 8

*Heze Huayi Chemical Co. v. United States,*
  No. 17-0032, 2018 WL 2328183 (Ct. Int'l Trade May 22, 2018) ........................................... 12

*Home Meridian Int'l, Inc. v. United States,*
  772 F.3d 1289 (Fed. Cir. 2014) ........................................................ 10

*INS v. Elias-Zacarias,*
  502 U.S. 478 (1992) ........................................................ 8

*Jiaxing Bro. Fastener Co., Ltd. v. United States,*
  822 F.3d 1289 (Fed. Cir. 2016) ........................................................ 9, 10

*Mid Continent Nail Corp. v. United States,*
  712 F. Supp. 2d 1370 (Ct. Int'l Trade 2010) ........................................................ 12, 13, 18, 19

*Nation Ford Chem. Co. v. United States,*
  166 F.3d 1373 (Fed. Cir. 1999) ........................................................ 9, 10

*Nucor Corp. v. United States*,
  612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ............................................................... 8

*QVD Food Co., Ltd. v. United States*,
  658 F.3d 1318 (Fed. Cir. 2011) ............................................................................... 10

*Shandong Huarong Gen. Corp. v. United States*,
  159 F. Supp. 2d 714 (Ct. Int'l Trade 2001) ............................................................... 8

*Vinh Hoan Corp. v. United States*,
  49 F. Supp. 3d 1285 (Ct. Int'l Trade 2015) ............................................................. 11

*Wheatland Tube Co. v. United States*,
  161 F.3d 1365 (Fed. Cir. 1998) ................................................................................. 8

*Zhejiang DunAn Hetian Metal Co. v. United States*,
  652 F.3d 1333 (Fed. Cir. 2011) ........................................................................... 9, 10

**Statutes**

19 U.S.C. § 1673 ............................................................................................................... 8

19 U.S.C. § 1677b ..................................................................................................... passim

**Regulations**

19 C.F.R. § 351.408 .................................................................................................... 9, 11

**Other Authorities**

*Antidumping Methodologies in Proceedings Involving Non–Market Economy Countries:
  Surrogate Country Selection and Separate Rates*, 72 Fed. Reg. 13,246 (Dep't of Commerce
  Mar. 21, 2007) ........................................................................................................... 11

*Certain Aluminum Foil from the Republic of Armenia: Final Affirmative Determination of Sales
  at Less Than Fair Value*, 86 Fed. Reg. 52,882 (Dep't of Commerce September 23, 2021) ..... 17

*Chlorinated Isocyanurates from the People's Republic of China:  Final Results of Antidumping
  Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 10,411 (Dep't of Commerce February
  24, 2020) ........................................................................................... 12, 14, 16, 19

*Common Alloy Aluminum Sheet from the People's Republic of China: Final Results of
  Antidumping Duty Administrative Review, Final Successor-In-Interest Determination, and
  Final Determination of No Shipments; 2018–2020*, 86 Fed. Reg. 74,066 (Dep't of Commerce
  December 29, 2021) ................................................................................................... 16

*Hydrofluorocarbon Blends from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review*, 89 Fed. Reg. 16,724 (Dep't of Commerce March 8, 2024)........ 15

*Steel Propane Cylinders from the People's Republic of China:  Final Determination of Sales at Less Than Fair Value*, 84 Fed. Reg. 29,161 (Dep't of Commerce June 21, 2019).................. 17

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| TIANJIN MAGNESIUM INTERNATIONAL CO., LTD., *et al.*,           ) ) ) ) | |
|       Plaintiffs,           ) ) | |
|       v.           ) ) | Court No. 25-00002 |
| UNITED STATES,           ) ) | |
|       Defendant.           ) ) | |

## <u>ORDER</u>

Upon consideration of plaintiffs' motion for judgment upon the agency record,

defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the motion is denied, and it is further

ORDERED that judgment shall enter in favor of the United States.

Dated:_____, 2025
      New York, N.Y.

_____
                        JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| TIANJIN MAGNESIUM<br>INTERNATIONAL CO., LTD., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Court No. 25-00002

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, defendant, the United States, respectfully responds to the motion for judgment on the agency record filed by plaintiffs, Tianjin Magnesium International Co., Ltd. (TMI) and Tianjin Magnesium Metal Co., Ltd. (MMC), (collectively, Tianjin Magnesium).  Tianjin Magnesium challenges the Department of Commerce's (Commerce) final results of the administrative review of the antidumping duty order covering pure magnesium from the People's Republic of China (China).  As demonstrated below, Commerce's determination is supported by substantial evidence and is in accordance with law.  Accordingly, we respectfully request that the Court sustain Commerce's final results and deny plaintiffs' motion for judgment on the agency record.

**STATEMENT PURSUANT TO RULE 56.2**

**I.      The Administrative Determination Under Review**

The administrative determination under review is *Pure Magnesium from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2022–2023*, 89

Fed. Reg. 100,967 (Dep't of Commerce December 13, 2024) (final results) (P.R. 121),[1] and

accompanying Issues and Decision Memorandum (IDM) (P.R. 117).  The review covers

producers and exporters Tianjin Magnesium International Co., Ltd. and Tianjin Magnesium

Metal Co., Ltd.  The period of review is May 1, 2022, through April 30, 2023.

## II.  <u>Issues Presented For Review</u>

     1.    Whether Commerce's selection of Türkiye as the primary surrogate country was

in accordance with the law and supported by substantial evidence.

     2.    Whether Commerce correctly determined that Bulgaria was not a producer of

identical merchandise.

<div align="center"><u>STATEMENT OF FACTS</u></div>

     On July 12, 2023, Commerce published the initiation of the administrative review of the

antidumping duty order covering pure magnesium from China for the period May 1, 2022,

through April 30, 2023.  *See Initiation of Antidumping and Countervailing Duty Administrative

Reviews*, 88 Fed. Reg. 44,262 (Dep't of Commerce Jul. 12, 2023) (P.R. 6).  The administrative

review covers two producers/exporters:  TMI and MMC.  *See* IDM at 1.  Because China is a non-

market economy country, the Tariff Act requires Commerce to calculate the normal value of

pure magnesium based on surrogate values offered in a comparable market economy.  *See*

19 U.S.C. § 1677b(c)(1).

     To select a primary surrogate country, pursuant to 19 U.S.C. § 1677b(c)(4), Commerce

compiled a surrogate country list of market economies that are comparable to China in terms of

economic development.  *See Pure Magnesium from the People's Republic of China: Preliminary*

---

[1]  Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of
the underlying administrative review.

*Results of Antidumping Duty Administrative Review; 2022-2023*, 89 Fed. Reg. 48,149 (Dep't of Commerce Jun. 5, 2024) (P.R. 92), and accompanying preliminary decision memorandum (PDM) at 7-8 (P.R. 86).  The surrogate country list included Bulgaria, Chile, Costa Rica, Malaysia, Romania, and Türkiye as economically comparable based on per capita gross national income (GNI) data available from the 2022 World Bank's World Development Report.  *See* Memorandum re: Request for Economic Development, Surrogate Country and Surrogate Value Comments and Information (September 25, 2023) (Surrogate Country Request) at Attachment, (Surrogate Country List) (P.R. 25); PDM at 7-8.  Commerce explained that GNI is the "primary indicator of a country's level of economic development."  *Id.*  China had a GNI of $12,850, and Commerce chose six countries whose GNI were at the same level of China, ranging from $15,660 for Romania to $10,590 for Türkiye.  *Id.* at 2.  Commerce explained that this list is not exclusive because "{c}ountries that are not at the same level of economic development as China's, but still at a level of economic development comparable to China, should be selected *only* to the extent that data considerations outweigh the difference in levels of economic development."  *Id.* at 2 (emphasis added).  Commerce generally formulates this list by selecting three market economy countries with a GNI above and three below China.  PDM at 7-8.

On September 25, 2023, Commerce released the surrogate country list and solicited comments regarding the selection of the surrogate country and offered interested parties an opportunity to provide surrogate value data.  *See* Surrogate Country Request at Attachment.  Commerce set an initial deadline of October 16, 2023, to receive comments regarding surrogate country selection "so that Commerce may have an opportunity to consider these comments for the preliminary results."  Surrogate Country Request at 2.  These comments were to address whether a country on the surrogate list was a "significant producer of merchandise comparable to

the merchandise subject to this review," "information regarding data availability and the quality

of the data," "and information regarding data availability and quality of financial statements."

*Id.* at 1-2.  No party challenged Commerce's list of economically comparable countries.  IDM at

6.

Commerce received timely comments from US Magnesium LLC (petitioner) and

respondent MMC regarding Commerce's surrogate country selection.  *See* Letters from

Petitioners re: Surrogate Country Comments, dated October 16, 2023 (P.R. 31), Surrogate Value

Comments, dated December 15, 2023 (P.R. 50-60), Surrogate Value Submissions, dated October

30, 2023 (P.R. 44), Surrogate Country and Value Reply, dated January 2, 2024 (P.R. 62),

Surrogate Value Rebuttal, dated May 6, 2024 (P.R. 80); *see* Letters from Respondents re:

Surrogate Value  Submission, dated October 30, 2023 (P.R. 34-43), Surrogate Value Rebuttal,

dated December 21, 2023 (P.R. 61).

Tianjin Magnesium argued that Commerce should select Bulgaria as the primary

surrogate country because it is at a level of economic development comparable to China and is a

significant producer of aluminum, which has long been considered comparable to magnesium.

Tianjin Magnesium submitted period of review specific Bulgarian surrogate value import data

and 2022 financial statements.  Letter from Respondents re: Surrogate Value Submission, dated

October 30, 2023.

Petitioner requested that Commerce select either Türkiye or Malaysia as the primary

surrogacy country, "arguing that both countries had a primary magnesium production capacity of

15,000 metric tons" and that none of the other listed countries produce subject merchandise or

comparable merchandise.  *See* PDM at 8 (citing Petitioner's Submission of Surrogate Vaues at 1;

Petitioner's Surrogate Value Rebuttal at 5).   Further, petitioner argued that the majority of

Bulgarian exports of magnesium were for downstream articles which is comparable but not identical to the subject merchandise.  Letters from Petitioner re: Surrogate Value Comments, dated December 15, 2023; Surrogate Country and Value Reply, dated January 2, 2024.  The petitioner provided period of review specific Türkiye and Malaysian factors of production import data, including the 2022 financial statements of Türkiye and Malaysian producers of identical or similar merchandise.  *Id.*

On June 5, 2024, Commerce published its preliminary results. *See* PDM.  Commerce preliminarily selected Türkiye as the primary surrogate country for this administrative review because Türkiye "is at a comparable level of economic development pursuant to 773(c)(4) of the Act; is a significant producer of comparable merchandise; and has publicly available data for all the identified inputs submitted by {plaintiffs}."  PDM at 12.  Specifically, Commerce explained that if more than one potential surrogate country satisfies the statutory requirements for selection, Commerce selects the primary surrogate country "with the best factors available."  PDM at 11 (quoting Import Admin., U.S. Dep't of Commerce, Non-Market Economy Surrogate Country Selection Process, *Policy Bulletin* 04.1 (2004), *http://enforcement.trade.gov/policy/bull04-1.html* (last visited July 31, 2025) (*Policy Bulletin*)).  Commerce preliminary determined that "the data submitted for Malaysia and Türkiye generally are publicly available, representative of broad market averages, tax- and duty-exclusive, and specific to pertinent inputs."  PDM at 11.  Based on this, Commerce preliminarily determined the record contained complete surrogate value data from Türkiye and Malaysia.  PDM at 11.

After receiving case and rebuttal briefs from parties, Commerce issued its final results on December 13, 2024.  In the final results, Commerce continued to find that Türkiye is at a comparable level of economic development, is a significant producer of comparable

merchandise, and has publicly available data that constitute the best available information on the record.  IDM at 5.  Accordingly, Commerce continued to find no basis for selecting Bulgaria as the primary surrogate country.  IDM at 5.  Specifically, Commerce determined that Türkiye is at the same level of economic development as China.  IDM at 5-6.  Moreover, Commerce determined that production data on the record demonstrated that Türkiye was a significant producer of identical merchandise; therefore, Commerce did not need to rely on export data (the information on the record with respect to Bulgaria) as a proxy for production.  IDM at 7.  Commerce also found that Bulgaria was not a significant producer of comparable merchandise in the underlying administrative review.  IDM at 6-9.

On January 21, 2025, Commerce amended its final results correcting certain ministerial errors in the final margin calculation following allegations made by the petitioner and plaintiffs.  *See Pure Magnesium from the People's Republic of China:  Amended Final results of Antidumping Duty Administrative Review; 2022-2023*, (Dep't of Commerce Jan 21, 2025) (P.R. 129), and accompanying IDM (P.R. 127).

In sum, Commerce concluded that Türkiye surrogate value data were the best available information on the record, and Commerce relied on Türkiye as the primary surrogate country for the subject product.  Plaintiffs challenge these aspects of the final results.

## SUMMARY OF ARGUMENT

The Court should sustain Commerce's final results.  First, Commerce reasonably selected Türkiye as the primary surrogate country because it is a significant producer of comparable merchandise and economically comparable to China.  The statute does not further define the requirement that Commerce select a market economy that is a "significant producer of comparable merchandise," and in its *Policy Bulletin* 04.1, Commerce has reasonably interpreted

this requirement to prefer primary surrogacy countries that are economically comparable to China and are significant producers with the best available data. Second, Bulgaria was not selected because Commerce considers economically comparable countries that produce comparable merchandise only when the record contains no useable data for an economically comparable country that produces identical merchandise. Thus, Commerce properly selected Türkiye surrogate values as the best available information to value the factors of production. Accordingly, the Court should sustain Commerce's final results.

## ARGUMENT

### I.    Standard Of Review

The Court will uphold Commerce's antidumping duty determination if it is supported by "substantial evidence on the record" and is otherwise "in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "more than a mere scintilla" of relevant and reasonable evidence to support the underlying conclusions. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The requisite proof amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of "the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (footnote and internal quotation marks omitted).

That the Court may draw two inconsistent conclusions from the record "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) (citation omitted). Rather, when Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, as with Commerce's administrative reviews, the agency's conclusions may be set aside if the record contains evidence "so compelling that no reasonable factfinder" could reach the same

conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

Thus, "the Court will not disturb an agency determination if its factual findings are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusion." *Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001); s*ee also Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) ("{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." (citations and internal quotation marks omitted)).  It is not necessary for Commerce to provide an explicit explanation where its path is reasonably discernible. *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998) (citing *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987) ("A court may 'uphold {an agency's} decision of less than ideal clarity if the agency's path may reasonably be discerned.'" (citation omitted)).

## II.   Legal Framework For Surrogate Value Selections

An antidumping duty represents the amount by which the "normal value" of subject merchandise exceeds its "export price (or the constructed export price)."  19 U.S.C. § 1673.  In proceedings involving a non-market economy, such as China, Commerce determines the subject merchandise's normal value by relying on the "best available information" from a market economy country or countries to derive surrogate valuations for the Chinese entity's factors of production, including raw materials, labor, and utilities. *See* 19 U.S.C. § 1677b(c).  To those factors, Commerce also adds "an amount for general expenses and profit plus the cost of containers, coverings, and other expenses." *Id.*

The statute requires that Commerce use, "to the extent possible," surrogate factors from "one or more market economy countries that are — {(1)} at a level of economic development comparable to that of the nonmarket economy country, and {(2)} significant producers of comparable merchandise." *Id.* § 1677b(c)(4)(A)-(B). If more than one market economy country is economically comparable and a significant producer of comparable merchandise, then Commerce evaluates and compares the reliability and completeness of the record data from those countries. *Policy Bulletin* 04.1.

By statute, Commerce must select the "best available information" on the record to value the factors of production. *Jiaxing Bro. Fastener Co., Ltd. v. United States*, 822 F.3d 1289, 1294 (Fed. Cir. 2016) (citing 19 U.S.C. § 1677b(c)(1)(B)). However, because the statute is silent regarding what constitutes the "best available information," Commerce possesses "broad discretion" in deciding what record evidence meets the criteria. *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir. 2011) (citations omitted); *Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999). In practice, Commerce strives to select, to the extent practicable, surrogate values that are product-specific, representative of a broad-market average, publicly available, contemporaneous with the period of review, and tax and duty exclusive. *See generally Policy Bulletin* 04.1; *see also Jiaxing Bro.*, 822 F.3d at 1293.

Commerce also has a regulatory preference to use as much data as possible from a single primary surrogate country. *See* 19 C.F.R. § 351.408(c)(2); *Jiaxing Bro.*, 822 F.3d at 1294, 1294 n.3 (citing *Policy Bulletin* 04.1). Commerce will "*only resort* to a secondary surrogate country if data from the primary surrogate country are *unavailable or unreliable*." *See Jiaxing Bro. Fastener Co. v. United States*, 11 F. Supp. 3d 1326, 132–33 (Ct. Int'l Trade 2014) (citations

omitted) (emphasis added), *aff'd*, *Jiaxing Bro.*, 822 F.3d 1289.

Commerce may rely on "imperfect" data. *Jiaxing Bro.*, 822 F.3d at 1301 (citing *Home Meridian Int'l, Inc. v. United States*, 772 F.3d 1289, 1296 (Fed. Cir. 2014)). Furthermore, Commerce is not required to duplicate the precise experience of the manufacturer in the non-market economy. *Nation Ford*, 166 F.3d at 1377. Instead, Commerce seeks to identify and to rely on the record data that "most accurately represents the fair market value" of the relevant factor of production. *Id.*

Accordingly, given Commerce's discretion to determine the "best available information," and the fact-specific nature of this deferential case-by-case inquiry, the Court considers "not whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information." *Jiaxing*, 822 F.3d at 1301 (citing *Zhejiang*, 652 F.3d at 1341).

**III.   Commerce's Selection Of Türkiye As The Primary Surrogate Country Is Supported By Substantial Evidence And Otherwise In Accordance With Law**

Commerce's selection of Türkiye as the primary surrogate country is supported by substantial evidence and in accordance with law. Türkiye is at a comparable level of economic development as China and is a significant producer of comparable merchandise.

**A.      Türkiye Is Economically Comparable To China**

Congress delegated to Commerce the selection of a surrogate country and its resulting data. *See QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1320 (Fed. Cir. 2011) ("Because it is not always possible to determine the normal value of goods from nonmarket economy countries in the manner outlined in 19 U.S.C. § 1677b(a)(1), Congress allows Commerce to value the factors of production for such goods by looking to the best available information from appropriate market economy countries, referred to as 'surrogate countries.'" (citations omitted));

*see also* 19 U.S.C. § 1677b(c)(1) ("the administering authority shall determine the normal value

of the subject merchandise."). The Tariff Act, however, is silent with respect to how Commerce

may determine which countries are economically comparable; therefore, Commerce has

promulgated a policy to guide the surrogate country selection process. *Policy Bulletin* 04.1.

Commerce's longstanding practice is to identify countries that are at a level of economic

development comparable to the non-market economy country in question, in this case China,

based on GNI data reported in the World Bank Development Report. PDM at 7-8. A country's

GNI ranking is "a threshold statutory criterion that must be met before other criteria are

considered" in forming the initial surrogacy country list. *Clearon Corp. v. United States*, 38

C.I.T. 1122, 2014 WL 3643332, at *11 (Ct. Intl. Trade 2014). Under 19 C.F.R. § 351.408(b),

Commerce "will place primary emphasis on per capita GDP as the measure of economic

comparability." Commerce relies on per capita GNI instead of per capita GDP because "while

the two measures are very similar, per capita GNI is reported across almost all countries by an

authoritative source (the World Bank)," and Commerce "believes that the per capita GNI

represents the single best measure of a country's level of total income and thus level of economic

development." *Vinh Hoan Corp. v. United States*, 49 F. Supp. 3d 1285, 1293 n.5 (Ct. Int'l Trade

2015) (quoting *Antidumping Methodologies in Proceedings Involving Non–Market Economy

Countries: Surrogate Country Selection and Separate Rates*, 72 Fed. Reg. 13,246, 13,246 n.2

(Dep't of Commerce Mar. 21, 2007)).

     In the underlying review, Commerce, acting according to its practice, used the 2022 GNI

data and provided interested parties with a list of potential surrogate countries found to be at a

level of economic development comparable to China, including Romania, Chile, Bulgaria, Costa

Rica, Malaysia, and Türkiye.  PDM at 8-9.  Tianjin Magnesium does not challenge that this threshold factor has been met.

      **B.**      <u>**Türkiye Is A Significant Producer Of Comparable Merchandise**</u>

Congress requires that Commerce "shall utilize, to the extent possible, the prices or costs of factors of production in one or more market economy countries" for valuing factors of production in a nonmarket economy.  19 U.S.C. § 1677b(c)(4).  Thus, after Commerce compiles the initial surrogate country list, Commerce will then consider whether the countries on the list are significant producers of comparable merchandise.  *See Clearon*, 2014 WL 3643332, at *8. Commerce's *Policy Bulletin* 04.1 explains that "{c}omparable merchandise is not defined in the statute or the regulations, since it is best determined on a case by case basis."  The *Policy Bulletin* continues:  "{e}ven so, there are some basic rules that every team should follow."  The *Policy Bulletin* elaborates on the significance of finding identical merchandise: "{i}n cases where identical merchandise is not produced, the team must determine if other merchandise that is comparable is produced."  *Id.*  Further, only when Commerce has no useable data for an economically comparable country that produces identical merchandise does Commerce consider economically comparable countries that produce comparable merchandise.  *See* PDM at 11; *Chlorinated Isocyanurates from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 10,411 (Dep't of Commerce February 24, 2020) (*Isos from China*), and accompanying IDM at Comment 2.  Although identical products are preferable, *see Mid Continent Nail Corp. v. United States*, 712 F. Supp. 2d 1370, 1377 n.7 (Ct. Int'l Trade 2010); *Heze Huayi Chemical Co. v. United States*, No. 17-0032, 2018 WL 2328183, at *4 n.3 (Ct. Int'l Trade May 22, 2018), the statute does not require that they be identical.

Commerce found, based on the record evidence, that Türkiye was a significant producer of comparable merchandise.  IDM at 7.  Export data from Global Trade Atlas (GTA) show that, during the period of review, all six countries on Commerce's surrogate country list had exports of various types of magnesium articles.  *See* Petitioner's Surrogate Country Comments; *see also* PDM at 10.  However, the U.S. Geological Survey data release for 2022, which provides information concerning worldwide magnesium production, identifies Türkiye as having the capacity to produce "primary magnesium" and with an estimated 13,000 metric tons of production in 2021.  *See* Petitioner's Surrogate Country Comments; *see also* IDM at 7.  Based on production and export data, Commerce found Türkiye to be a significant producer of identical merchandise.  *See* PDM at 8; Petitioner's Surrogate Country Comments at Attachment 2, Table 7.

Tianjin Magnesium's argument, that Commerce's finding that Türkiye was a significant producer of identical merchandise is irrelevant given that Commerce ultimately relied on data for comparable merchandise as surrogate values, misunderstands Commerce's practice in valuing factors of production.  Br. at 13-14.  As Commerce explained, the process begins with identifying surrogate countries that are economically comparable and are significant producers of comparable merchandise, with a preference for countries that produce identical merchandise, before selecting the financial statements and data that are of superior quality and will ultimately be relied upon.  *See* IDM at 5-10; *Mid Continent Nail*, 712 F. Supp. 2d at 1377.  Thus, Tianjin Magnesium's argument conflates two distinct portions of Commerce's analysis.  Commerce must first determine which surrogate countries meet the statutory criteria set forth in 19 U.S.C. § 1677b(c)(4).  As explained above, only when Commerce has no usable data for an economically comparable country that produces identical merchandise does it consider economically

comparable countries that produce comparable merchandise. *See* PDM at 11; *Isos from China*, 85 Fed. Reg. 10,411, and accompanying IDM at Comment 2. Commerce's selection of surrogate values from Turkish financial statements is irrelevant for the purposes of Commerce's selection of Türkiye as the primary surrogate country. The Court should reject Tianjin Magnesium's argument.

       **C.**      **<u>Tianjin Magnesium's Data Quality Arguments Do Not Warrant Relief</u>**

       Although data quality is not one of the statutory factors for determining the primary surrogate country, the *Policy Bulletin* explains, "if more than one country has survived the selection process to this point, the country with the best factors data is selected as the primary surrogate country." *Policy Bulletin* 04.1. Only Türkiye and Malaysia were of comparable level of economic development as China and significant producers of identical merchandise. *See* IDM at 5-7. Because Bulgaria was not a significant producer of identical merchandise, Commerce did not need to consider whether Bulgaria had superior data. Commerce did, however, address Tianjin Magnesium's arguments concerning the use of specific Turkish surrogate values. *See* IDM at 8-11; Br. at 16-20. Specifically, Tianjin Magnesium argues that the import data from Türkiye is aberrational, the Türkiye energy data were flawed, and Türkiye is a hyper-inflationary economy. Br. at 16-20.

       Although Tianjin Magnesium claims that the import data from Türkiye is aberrational, no record evidence supports this assertion. *See* IDM at 9; Br. at 17-18. Specifically, Tianjin Magnesium contends that due to Türkiye's alleged insufficient quantities of dolomite, a major input in the production of magnesium, Türkiye's import data is aberrational. Br. at 17-18. As explained by Commerce, Tianjin Magnesium did "not cite to any source for its contention that the imports were not in commercial quantities and bases its calculations on the premise that a ton of subject merchandise consumes more than ten tons of dolomite, without providing any support

for this contention." IDM at 9. Moreover, nothing in the verification report cited by Tianjin Magnesium supports its contention that dolomite is a "high-bulk low value rock." *Compare* Br. at 17 *with* Verification Report at 10 (P.R. 99). Furthermore, because Türkiye and Malaysia were engaged in the production of pure magnesium, and both countries' dolomite import values are similar, Commerce found no basis to change its methodology using the dolomite surrogate value from Türkiye. IDM at 9 (citing Prelim. Surrogate Value Memorandum at Attachment). Thus, although Tianjin Magnesium cites a table indicating that Turkish and Malaysian import values for dolomite are comparatively lower than other countries on the surrogate country list, *see* Br. at 18, Commerce had no basis to change its methodology from the *Preliminary Results* where it used the dolomite surrogate values from Türkiye because no record evidence supports the contention that the imports were not in commercial quantities. IDM at 9.

Indeed, the Court has held, "there is no bright-line for what multiple of other price values would qualify as 'aberrational.'" *See Best Mattresses International Company Limited v. United States*, 622 F. Supp. 3d 1347, 1379 (Ct. Int'l Trade 2023); *see also Hydrofluorocarbon Blends from the People's Republic of China: Final Results of Antidumping Duty Administrative Review*, 89 Fed. Reg. 16,724 (Dep't of Commerce March 8, 2024), and accompanying Issues and Decision Memorandum at Comment 3. Therefore, comparing surrogate values purely on the basis of magnitude does not determine whether data are aberrational. *See Ashley Furniture Indus., LLC v. United States*, 607 F. Supp. 3d 1210, 1240 (Ct. Int'l Trade 2022) (sustaining Commerce's explanation that "'the existence of higher prices alone' is not sufficient to support the argument" that a particular surrogate value "results in 'aberrational' values"). Tianjin Magnesium's argument related to the quantity of dolomite in Türkiye does not serve as a sufficient basis for Commerce to deviate from its practice of using data from economically

15

comparable countries that produce comparable merchandise only when there is no usable data for an economically comparable country that produces identical merchandise. *See* PDM at 11; *Isos from China,* 85 Fed. Reg. 10,411, and accompanying IDM at Comment 2; *see also* IDM at 9. Commerce found that the Turkish data for dolomite was usable and from an economically comparable country that produces identical merchandise, and thus, consistent with its practice, Commerce relied on Turkish data in selecting a surrogate value for dolomite.

Next, Tianjin Magnesium also argues that the Turkish energy data (specifically, natural gas and electricity data) were flawed. Br. at 19-20. However, Commerce's selection of the Turkish energy data was in accordance with law and Commerce's practice. "Commerce's practice, when considering the best available information for valuing FOPs, is to select, to the extent practicable, SVs which are: (1) broad market averages; (2) product-specific; (3) tax exclusive, non-export average values; and (4) contemporaneous with the POI." IDM at 9-10. Further, Commerce "normally will value all factors from a single country. 19 C.F.R. § 351.408(c)(2). TMI argues that the Turkish natural gas data Commerce used is unreliable because it was based on data for natural gas in gaseous form rather than for natural gas in liquified form. Br. at 19. However, Commerce converted the data for the gaseous form of natural gas to obtain volumetric data for natural gas in liquified form, finding, as it did in other proceedings, that "a standard conversion for the physical state of the natural gas input does not significantly impact the specificity of the data." *See* IDM at 9-10 (citing *Common Alloy Aluminum Sheet from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Successor-In-Interest Determination, and Final Determination of No Shipments; 2018–2020*, 86 Fed. Reg. 74,066 (Dep't of Commerce December 29, 2021), and accompanying IDM at 28; *see also Steel Propane Cylinders from the People's Republic of*

*China:  Final Determination of Sales at Less Than Fair Value*, 84 Fed. Reg. 29,161 (Dep't of Commerce June 21, 2019), and accompanying IDM at 22).

With regard to electricity, Commerce found the World Bank data for Türkiye represented "the 'best available information' to value factors of production . . . based on the above enumerated factors."  *See* IDM at 10 (noting Commerce's preference for data from as single surrogate country).  Because Commerce found reliable data on the record from the primary surrogate country, Türkiye, Commerce relied on the data from Türkiye as the best available information.  This reliance is consistent with Commerce's practice of preferring data from a single surrogate country for valuing factors of production.  *See* IDM at 10 (citing *Certain Aluminum Foil from the Republic of Armenia: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 52,882 (Dep't of Commerce September 23, 2021), and accompanying IDM at 9-10.

Regarding Tianjin Magnesium's argument with respect to inflation, Commerce explained that it is aware of the inflationary environment in Türkiye.  IDM at 11.  However, Commerce is not mandated by the statute or regulations to disqualify a potential surrogate country as long as the requirements of the statute are met and the potential surrogate country provides publicly available, adequate, and reliable data from quality sources.  *Id.* at 11.  In the underlying review, Tianjin Magnesium did not dispute the fact that Türkiye meets the statutory requirements.  Thus, because Türkiye met the statutory requirements and the Turkish data provided the best available information from a single country, Commerce's selection of Türkiye as a surrogate country was supported by substantial evidence and in accordance with law.  Moreover, the country has remained on Commerce's surrogate country list for investigative periods dating back to at least 2019 and has been used as a surrogate country in multiple proceedings.  *Id.* at 11. The inclusion

17

of Türkiye on Commerce's surrogate country list for China substantiates that, under Commerce's standard statutory evaluation criteria, inflation does not automatically preclude consideration of Türkiye as a primary surrogate country. *Id.* at 11. Additionally, while inflation is not a factor in the development of the surrogate country list, Commerce found that Tianjin Magnesium did not establish that Turkish inflation resulted in significant distortions on values of multiple factors. *Id.* 4-5, 8-11, 14.

**IV.    Commerce's Decision To Reject Bulgaria As The Primary Surrogate Country Is Supported By Substantial Evidence And Otherwise In Accordance With Law**

The primary surrogate country is one that is both at a level of economic development comparable to that of the nonmarket economy country and a significant producer of comparable merchandise. 19 U.S.C. § 1677b(c)(4)(A)-(B). If more than one market economy country is economically comparable and a significant producer of comparable merchandise, then Commerce evaluates and compares the reliability and completeness of the record data from those countries. Bulgaria was found to be at a level of economic development comparable to China. *See* IDM at 5-6. However, as explained above, Commerce's practice, which has been sustained by this Court, is to use data from an economically comparable country that produces identical merchandise. *Mid Continent Nail*, 712 F. Supp. 2d at 1377. Based on record evidence, Commerce reasonably determined that Bulgaria was not a significant producer of identical merchandise. PDM at 9-10 (citing Petitioner's Surrogate Value Rebuttal Comments at 1-2).

Tianjin Magnesium argues that Commerce should have selected Bulgaria. Br. at 10-13. To Commerce, Tianjin Magnesium argued that Bulgaria should be considered a significant producer of comparable merchandise because its export data show Bulgaria had exports of magnesium under Harmonized Tariff Schedule, United States, subheading 8104.90, which covers "articles of magnesium." IDM at 7. Similarly, Tianjin Magnesium argues in its brief to

this Court that because HTSUS 8104.90 is listed in the scope of the *Order*, Bulgaria is a significant producer of identical merchandise.  Br. at 11.  Tianjin Magnesium also asserts that Commerce should have relied on export data to determine whether a country is a substantial producer of subject merchandise rather than production data.  *Id.*

Commerce's determination that Bulgaria is not a significant producer of identical merchandise is supported by substantial evidence and otherwise in accordance with law.  As explained above, Commerce will rely on data from economically comparable countries that produce comparable merchandise only when there is no usable data for an economically comparable country that produces identical merchandise.  *See* PDM at 11; *Isos from China,* 85 Fed. Reg. 10,411, and accompanying IDM at Comment 2.  Commerce did not rely on Bulgaria's data because Commerce had identified Türkiye as a significant producer of identical merchandise and Commerce's practice is to "consider{} a producer of identical merchandise {unless it} leads to data difficulties."  *See* PDM at 10-11 (quoting the *Policy Bulletin* 04.1). Thus, because Commerce complied with the statute in selecting a country that produces identical merchandise, *see Mid Continent Nail*, 712 F. Supp. 2d at 1377 ("Identical merchandise is comparable merchandise."), there was no need for Commerce to look further at countries with only comparable merchandise.  *See id.* at 10-11.

Further, Commerce's practice of relying on production data when available is in accordance with the statute, which directs Commerce to identify surrogate countries that are significant *producers* of comparable merchandise.  *See* 19 U.S.C. § 1677b(c)(4).  As explained in the IDM, Commerce relies on export data only when production data is not available.  IDM at 7. Although the HTS number that appeared in the export data for Bulgaria, HTS 8104.90 "Articles of Magnesium," is included in the scope language, Commerce's practice is to rely on production

data when it is available and to use export data as a proxy when it is not.  *See* IDM at 7-8.  Thus,

because Commerce determined based on production data on the record that Türkiye was a

significant producer of identical merchandise and had usable data, Commerce relied on Turkish

surrogate values for valuing the various inputs at issue in this litigation.  Moreover, even if

Bulgaria could have been chosen as a surrogate country, Commerce's determination that Türkiye

provided the best information available is supported by substantial evidence and should be

affirmed.

<div align="center"><b><u>CONCLUSION</u></b></div>

For these reasons, we respectfully request that the Court deny plaintiffs' motion for

judgment on the administrative record and sustain Commerce's final results.

<div style="margin-left: 40%;">

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

/s/ Kyle S. Beckrich
KYLE S. BECKRICH
Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 616-9322
Fax: (202) 305-7644

</div>

OF COUNSEL:

Paul Thornton
Attorney
Office of Chief Counsel
For Trade Enforcement & Compliance
Department of Commerce

August 5, 2025                                    *Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that defendant's motion in this matter complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the motion was prepared, the brief contains a total of 5,619 words.


/s/ Kyle S. Beckrich