BEFORE HON. TIMOTHY M. REIF, JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Tianjin Magnesium International Co., Ltd. and Tianjin Magnesium Metal Co., Ltd., <br><br> Plaintiffs, <br><br> v. <br><br> United States. | Court No. 25-00002 |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS
REPLY TO RESPONSE OF UNITED STATES TO PLAINTIFF'S
MOTION FOR JUDGMENT UPON THE AGENCY RECORD

David J. Craven
Counsel to Tianjin Magnesium
International Co., Ltd. and Tianjin
Magnesium Metal Co., Ltd

Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
(773) 709-8506
David.craven@tradelaw.com

Date August 29, 2025

TABLE OF CONTENTS

Table of Contents ..................................................................................................... i
Table of Authorities ................................................................................................ ii
Certificate of Compliance ...................................................................................... iii
I. INTRODUCTION ........................................................................................ 1
II. ARGUMENT ................................................................................................ 1
    A. Bulgaria is economically comparable ............................................... 2
    B. Bulgaria is a significant producer of identical merchandise ............. 2
        1. That Bulgaria is a significant producer of identical merchandise is supported by POR export data ................................................. 3
        2. The Department's practice is to use export data to determine significant producer ................................................................ 4
        3. There is no POR production data on record .............................. 6
        4. The out-of-period production data is only for a sub-set of subject merchandise ............................................................................. 6
        5. It is not relevant whether Türkiye or any other country is a significant producer when testing whether Bulgaria is a significant producer ................................................................. 7
    C. The superior nature of the Bulgaria data should be considered ........ 8
III. CONCLUSION .......................................................................................... 14

TABLE OF AUTHORITIES

Court Cases

*Ashley Furniture Indus., LLC v. United States*, 607 F. Supp. 3d 1210 (Ct. Int'l Trade 2022) .............................................................................. 11

*Best Mattresses International Company Limited v. United States*, 622 F. Supp. 3d 1347 (Ct. Int'l Trade 2023) ............................................... 11

*Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137 (Fed. Cir. 1987) ............................................................................................... 4

*Mid-Continent Nail Corp. v. United States,* 712 F.Supp. 2d 1370 (Ct. Int'l Trade 2010) .............................................................................. 8

*Nation Ford Chem. Co. v. United States*, 166 F.3d 1373 (Fed. Cir. 1999) ............................................................................................................ 9

*Wheatland Tube Co. v. United States*, 161 F.3d 1365 (Fed. Cir. 1998) .......... 4

Statutes

19 U.S.C. §1677b(c)(4) ............................................................................................ 8

Section 773(c)(4)(B) of the Tariff Act of 1930 ............................................. 3, 5

Legislative and Administrative

H.R. Conf. Rep. 100-576 (1988), U.S. Code Cong. & Admin. News 1988 1547 ................................................................................................. 9

Policy Bulletin 04.1 .............................................................................................. 2, 3

# CERTIFICATE OF COMPLIANCE

1. This reply complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains 4129 words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, the Table of Authorities, the signature block, and the present certificate) according to the word-count function of Microsoft Word for Office 365, the word processing program used to prepare this memorandum.

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

3. No artificial intelligence was used in the preparation of this brief.

Respectfully Submitted,<br>
/s/ David J. Craven<br>
David J. Craven

August 29, 2025

BEFORE HON. TIMOTHY M. REIF, JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Tianjin Magnesium International Co., Ltd. and Tianjin Magnesium Metal Co., Ltd.,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>United States. | Court No. 25-00002 |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS
REPLY TO RESPONSE OF UNITED STATES TO PLAINTIFF'S
MOTION FOR JUDGMENT UPON THE AGENCY RECORD

## I. INTRODUCTION

This is the reply to the response of the defendant United States to plaintiff's motion for Judgment on the Agency Record. This is not a complex matter and the range of issues before the Court are limited – primarily relating to the selection of the surrogate country. The Department's determination is not based on substantial evidence and the Department ignored key facts in making the determination.

## II. ARGUMENT

As a preliminary matter, plaintiff continues to rely upon its primary case brief in this matter and submits, as detailed below, that Defendant's arguments are unavailing.

The Department Determination to use Türkiye as the Source of Surrogate Values in not Supported by Substantial Evidence and is Otherwise not in Accordance

with Law. Bulgaria should be used. Bulgaria is economically comparable, a significant producer of identical merchandise and has superior data.

### A. Bulgaria is economically comparable

No parties disputed this factor has been met. See Defendant's response at 18 and December 6, 2024, final IDM at 6.(P.R. 117)

### B. Bulgaria is a significant producer of identical merchandise.

The Department's determination that Bulgaria is not a significant producer is contrary to the evidence.

In the defendant's response of August 5, 2025 to plaintiff's motion for judgment pursuant to Rule 56.2 ("Response") at pages 10-18, defendant argues that the Department's selection of Türkiye is supported by substantial evidence and otherwise in accordance with law. In making this claim, defendant relies upon the assertion that Bulgaria is not considered a significant producer of identical merchandise, and subsequently defendant had no need to compare the data quality between Türkiye and Bulgaria.

For easy reference, the Department's final determination on surrogate value is as follows, see December 6, 2024, final IDM at 9 (P.R. 117):

> *Data quality is not one of the statutory factors for determining a surrogate country; however, Policy Bulletin 04.1 explains that "if more than one country has survived the selection process to this point, the country with the best factors data is selected as the primary surrogate country." Because we have not considered Bulgaria to be a significant producer of comparable merchandise in this review, we do not need to consider whether Bulgaria has "superior data" because we have not determined that it is a significant producer of comparable merchandise.*

And, the preliminary determination, May 30, 2024, PMD at page 11 (P.R. 86):

> *As noted above, the Policy Bulletin states that "{i}n all cases, if identical merchandise is produced, the country qualifies as a producer of comparable merchandise."Moreover, footnote 6 of the bulletin states that "{i}f considering a producer of identical merchandise leads to data difficulties, the operations team*

2

*may consider countries that produce a broader category of reasonably comparable merchandise." (Emphasis added). Further, as stated in Isos from China, it is only when Commerce has no useable data for an economically comparable country that produces identical merchandise does it consider economically comparable countries that produce comparable merchandise. Therefore, if the record contains a producer of identical merchandise, the requirement of comparable merchandise under section 773(c)(4) of the Act is satisfied. There is no need to look further at countries with only comparable merchandise. Thus, we find that Türkiye and Malaysia are significant producers of comparable merchandise based on production, in addition to export data.*

The Department's assertion is contrary to the record evidence.

    1.    That Bulgaria is a significant producer of identical merchandise is supported by POR export data.

The Department's policy and traditional test as to whether a country is a significant producer is based on exports.

"Significant Producer" is defined in the Policy Bulletin. Policy Bulletin 04.1 states:

*The extent to which a country is a significant producer should not be judged against the NME country's production level or the comparative production of the five or six countries on OP's surrogate country list. Instead, a judgement should be made consistent with the characteristics of world production of, and trade in, comparable merchandise (subject to the availability of data on these characteristics).*
*…In another case, there may not be adequate data available from major producing countries. In such a case, "significant producer" could mean a country that is a net exporter, even though the selected surrogate country may not be one of the world's top producers.*

That said, a significant producer can be proved independently by its own export data, i.e., trade. Lack of production information, as opposed to affirmative evidence of no production, is not an adequate reason to reject a country as significant producer.

3

Plaintiffs as well as Petitioner have placed on record export data indicating Bulgaria has significant export of subject merchandise **(identical merchandise based on the HTS provision)** during the <u>**period of review.**</u>  This was confirmed by Commerce in its final determination. See IDM at page 7 as follows:

> *Thus, although we agree with MMC that the HTS 8104.90 "Articles of Magnesium" is included in the scope language, we disagree that Bulgaria's export data should be used to determine whether a country is a significant producer of comparable merchandise when there is world production data on the record.*

See also Commerce's August 5, 2025 response at page 19-20:.

> *Although the HTS number that appeared in the export data for Bulgaria, HTS 8104.90 "Articles of Magnesium," is included in the scope language, Commerce's practice is to rely on production data when it is available and to use export data as a proxy when it is not. See IDM at 7-8.*

Critically, the Defendant cannot claim that the limitations expressed in *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-70 (Fed. Cir. 1998) (citing *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987), which prevent the court from substituting its judgment for conflicting views are applicable.  The Defendant did not provide an analysis based on its erroneous decision as to what data can be considered to determine a significant producer and thus cannot reasonably say that the decision as a whole is reasonable and supported by the record.

    2.    The Department's practice is to use export data to determine significant producer

In its most recent review of the subject merchandise for the same petitioner and respondent, Commerce stated that it is its well-established practice to prefer to

4

use export data to determine a significant producer and did use export data to determine the significant producer in that review.

See Plaintiffs August 27, 2024 Case Brief at page 10-11, where the determination of the most recent review is cited. For easy reference, they are as follows:

> *The Department's Policy Bulletin states that "in all cases, if identical merchandise is produced, the country qualifies as a producer of comparable merchandise," and the Department may ultimately prefer a potential surrogate shown to produce identical merchandise over one with production of only comparable merchandise, based on the specifics of a given case.* ***However, the production of identical merchandise is not an exclusive or determinative factor to the surrogate country selection process where production of comparable merchandise is present, (emphasis added)*** *given the specific reference to the term "comparable merchandise" in section 773(c)(4)(B) of the Act in determining whether a market economy country is a significant producer for purposes of surrogate country selection. Based upon the language of the provision, the Policy Bulletin states that "if considering a producer of identical merchandise leads to data difficulties, the operations team may consider countries that produce a broader category of reasonably comparable merchandise."* ***In determining whether a potential surrogate country qualifies as a significant producer, the Department has a well–established practice of evaluating export data for the HTS categories listed in the scope of the Order for the countries identified as economically comparable potential surrogates by the Office of Policy list. (emphasis added).*** *The Department followed this practice in the Preliminary Results of the instant case, and found the Philippines to be a significant producer of the merchandise listed in the scope of the order. TMM provides no argument against or objection to this methodology, nor does TMM argue that the Department's analysis of the comparability of production for the Preliminary Results was erroneous. TMM's only objection appears to be that this analysis does not demonstrate the Philippines to be a significant producer of identical magnesium product; however, an exclusionary standard based strictly on production of identical merchandise is not rooted in any Department precedent or practice, nor is it contrary to section 773(c)(4)(B) of the Act.*

In contrast, in the case at bar, Commerce states that it prefers production data (where the respondent argues for a surrogate country based on export data) while in the most recent review it states that it prefers export data (where the respondent argues for a surrogate country based on production data), and uses both decisions to inconsistently reject the same respondent's allegations of surrogate country.

5

Commerce's determination is inconsistent and result oriented. Commerce's response that export data can only be used as a proxy when the production data is available is not in accordance with the law and its practice.

### 3. There is no POR production data on record

Initially, the production data at issue was for of Türkiye for 2021 while the period of review was May 2022 through April 2023. See December 6, 2024, final IDM at 7 and Petitioner October 16, 2023 Surrogate Country Comments at Attachment 2 (P.R. 31), as follows:

> *In the Preliminary Results, we found that, based on the record evidence, Malaysia and Türkiye were the only producers of identical merchandise – primary magnesium – that were found to be potential surrogate countries. The U.S. Geological Survey (USGS) data release for 2022 lists both Türkiye and Malaysia with the capacity to produce "primary magnesium," and lists Türkiye with an estimated 13,000 metric tons of production in 2021.*

In contrast, the export data, which as discussed below is the primary data used to determine production in matters before the Department, was contemporaneous for the POR. See December 6, 2024, final IDM at 7 and Petitioner October 16, 2023 Surrogate Country Comments at Attachment 1(P.R. 31). The production data from 2021, even if it might be relevant for a POR including 2021, has no bearing on whether in 2022 and 2023 the country remains a significant producer.

### 4. The out-of-period production data is only for a sub-set of subject merchandise rather for the subject merchandise

The "production data" cited by the petitioner and the defendant is of a limited sub-set of material subject to the order. The data is for "primary magnesium", which is a sub-set of pure magnesium. No production data for a sub-set of subject merchandise does not necessarily mean no production for all the subject

6

merchandise. At most it can be used to indicate the production of a sub-set of subject merchandise in Türkiye or Malaysia in a period before the POR. It cannot be used to prove there is no production of **subject merchandise** in Bulgaria during the POR. This is simply a question of logic.

The Department failed to properly determine the proper comparison product. The proper comparison product is necessarily product that falls within the scope. This is important. The subject merchandise is broader than the simple production of primary magnesium and covers a broader range of products. The order clearly states:

> Merchandise covered by the Order is pure magnesium **regardless of** chemistry, **form or size**, unless expressly excluded from the scope of the Order". It further states that "Pure magnesium products covered by the Order are currently classifiable under Harmonized Tariff Schedule of the United States (HTSUS) subheadings 8104.11.00, 8104.19.00, 8104.20.00, 8104.30.00, **8104.90.00**, 3824.90.11, 3824.90.19, and 9817.00.90.
> (Preliminary IDM Memo ("PIDM") (P.R. 86)

The scope clearly establishes that the subject merchandise is not limited to those forms classified under 8104.11.00 or 8104.19.00. The scope covers all forms of pure magnesium. Critically this includes those "Articles of Magnesium" under 8104.90.00. Bulgaria has substantial exports of pure magnesium which are mainly under 8104.90.00 which, in turn, establishes the export and production of subject merchandise, i.e., identical merchandise.

5. It is not relevant whether Türkiye or any other country is a significant producer when testing whether Bulgaria is a significant producer

The criteria here it is a question as to whether or not a country is a significant producer, and the issue is not whether one country or another is a "more" significant producer.

7

Even the Department would determine Türkiye is a significant producer based on some out-of-period data which purportedly related to production of a sub-set of subject merchandise, such determination is not relevant as to whether Bulgaira is a significant producer.

As stated in its response, Commerce must first determine which surrogate countries meet the statutory criteria of economically comparable and significant producer, see August 5, 2025 response at 13, as follows:

> *As Commerce explained, the process begins with identifying surrogate countries that are economically comparable and are significant producers of comparable merchandise, with a preference for countries that produce identical merchandise, before selecting the financial statements and data that are of superior quality and will ultimately be relied upon. See IDM at 5-10; Mid Continent Nail, 712 F. Supp. 2d at 1377. Thus, Tianjin Magnesium's argument conflates two distinct portions of Commerce's analysis. Commerce must first determine which surrogate countries meet the statutory criteria set forth in 19 U.S.C. § 1677b(c)(4).*

As stated by the defendant in its response, "identical products are preferable" (Response at 12) and that Türkiye was a significant producer of comparable merchandise. (Response at 13). This, however, ignores the nature of the Bulgarian Production. As noted above in point A and B, Bulgaria is economically comparable and a significant producer of **identical merchandise** producing products which are in the specific HTS provisions identified in the order. Bulgaria is eligible for selection as surrogate country in the Department's own words.

### C.  The superior nature of the Bulgaria data should be considered

At pages 14 to 18 of its response, defendant states that it did not consider the quality of data. This is primarily based on the Department's finding that Türkiye is a significant producer, while Bulgaria is not. As discussed above, this determination is wrong. Defendant argues that data quality is only relevant where the other factors are equal, and thus the Department is free to use aberrational data. As set forth in

8

point A and B above, Bulgaria is at least equal to Türkiye in factors other than data quality. Defendant should consider the superior data of Bulgaria in selecting surrogate country. In fact, the quality of data is also important and this failure to consider is contrary to the direction of the Courts. In *Nation Ford Chem. Co. v. United States*, 166 F.3d 1373 (Fed. Cir. 1999) the Federal Circuit cited with approval the goal of the Surrogate Value process. The Federal Circuit stated:

> NFC does not explain why Commerce should have used the Indian domestic price, a price admittedly distorted by the Indian tariff, in the valuation of aniline when the Chinese producers would not have been expected to live with a similar distortion were they to operate in a free market. Not only is NFC's approach inconsistent with § 1677b(c)'s goal of constructing a hypothetical "market value" representative of the foreign producers under investigation, it is also at odds with the intent of Congress, which warned that Commerce should avoid the use of distorted surrogate prices. *See* H.R. Conf. Rep. 100-576, at 590 (1988), U.S. Code Cong. & Admin. News 1988 at 1547

*Nation Ford Chem. Co. at* 1377 – 78

If, however, the Department does not consider the flaws in the data, how can it determine whether the data is, in fact distorted. As such, the Department must consider the flaws in its analysis to satisfy this goal. It is critical to note that there are a number of major flaws with the Türkçe data. One of the most egregious is the aberrational nature of the import data from Türkiye for Dolomite. Simply put, the import data from Türkiye for Dolomite is aberrational. This issue is not just based on the value; it is also based on the quantity. Dolomite is a high-bulk low value rock. (Verification Report at 10, P.R.99).

Türkiye imported 124,720 kg (124.72 metric ton) of dolomite under HS 251810 during the POR in 20 monthly transactions (P.R. 6). Of these transactions, 7 have a quantity below 100kg (0.1metric ton) for each, and 2 a quantity below 200kg (0.2 metric ton). This is far under the quantity needed for commercial production. As demonstrated during the review and confirmed during verification, more than 10 metric tons at a time are placed in the kiln and more than 100 metric

tons per day. The total quantity of imports into Türkiye would supply less than 3 days of magnesium production. 124.7 MT is clearly an insufficient quantity for any production. (Rebuttal to Petitioner Comments at page 5) (P.R.61). The import quantities for Türkiye are insignificant as regarding a high-bulk low value rock like dolomite. In fact, nearly half of the total transactions involving Türkiye add up to about 1 metric ton, far less than a normal container. Simply put the Türkçe import quantities, most of which are for a few kilograms in each transaction and are obviously aberrational as regarding to a high-bulk low value rock like dolomite. (P.R. 88).

As detailed in the chart below, the imports of Dolomite, by quantity, are also insignificant. Türkiye's imports, by quantity and 0.138% of the total, 0.827% of the average, and 2.5% of the imports for Bulgaria, the other prospective surrogate country.

The data is not only aberrational with respect to quantity, the fact that the Dolomite imported into Türkiye is not the kind used for production and is aberrational is also demonstrated by the value. Plaintiff's April 29, 2024 Surrogate Value submission at pages 9 through 10, (P.R. 75) demonstrated that:

| Country | US$ | MT | Price | Unit |
|---|---|---|---|---|
| Romania | 824,000 | 19,601 | 42.04 | US$/MT |
| Costa Rica | 3,178,000 | 17,265 | 184.07 | US$/MT |
| Chile | 3,676,000 | 47,220 | 77.85 | US$/MT |
| Bulgaria | 250,367 | 4,944 | 50.64 | US$/MT |
| Türkiye | 45,434 | 124 | 364.29 | US$/MT |
| Malaysia | 312,417 | 812 | 384.60 | US$/MT |
| **Total** | **8,286,219** | **89,967** | **92.10(average)** | **US$/MT** |

This comparison establishes that Türkiye's imports are aberrant with respect to value. These import prices are several times higher than all but one of the other countries, and FOUR times higher than the average price of all the six countries.

Further, plaintiffs provided publicly available market information indicating the dolomite price in EU is between $57-$210 per ton among countries while between $7.7-$30 per ton in Asia. See December 21, 2023 Rebuttal Comments of petitioner at page 6 and its Exhibit 2 and 3 (P.R. 61). While such data was not submitted as a market price for use as surrogate value, it provided a baseline of the overall world prices of Dolomite and establishes the aberrational nature of the Türkçe dolomite prices. Even the highest price in EU is far lower than the ones in Türkçe import data used by the Department.

Where, as here, the quantities are so small as to be non-commercial in nature, and where the prices are also out of line, the dolomite values are necessarily aberrational. This is particularly problematic where, as here, we have another good surrogate country with non-aberrational data. Plaintiff submits that the Türkçe dolomite value is aberrational for both quantity and value. That this data is aberrational for both quantity and value is important.

While in *Ashley Furniture Indus., LLC v. United States*, 607 F. Supp. 3d 1210 (Ct. Int'l Trade 2022) and in *Best Mattresses International Company Limited v. United States*, 622 F. Supp. 3d 1347 (Ct. Int'l Trade 2023) the Court found that the surrogate values were not aberrational based on value, in this case we not only have aberrational values, we have aberrational quantities – a distinction which sets this case apart. As the Courts have noted, there is no "bright line" to determine what is aberrational, it did not hold that values could be found to be aberrational.

A second major problem is that the GTA data from Türkiye is incomplete. Specifically, the Türkiye data did not include a price for **natural gas**. Plaintiff's producer used natural gas in gaseous state, as the gas pipe shown during the

11

verification. Verification report at page 10 (P.R.99). Türkiye does not have import data for natural gas in a gaseous state (HTS 271121). While the Department tried to calculate a value, such calculation was based on certain assumptions, and necessarily is not as accurate as data for the actual input.

The Türkiye GTA data provided by Petitioner, and used by the Department, was not for natural gas in a gaseous state. Liquified gas is totally different from gaseous natural gas in all aspects including unit price. In contrast, the data for Bulgaria did include such value (along with all other values).

A third flaw was the Türkçe electricity price. Specifically, the electricity price provided for Türkiye was not for industrial use. The Türkçe electricity was for "commercial warehouse" ("Price based on monthly bill for commercial warehouse in case study for city covered") Petitioner December 15, 2023 Submission of Surrogate Values Part II Exhibit I-4 (P.R.52). Petitioner did not provide a Türkiye electricity price for industrial users. Electricity is a critical input and the absence of this input in the surrogate data raises questions. In contrast, the surrogate value for Bulgaria was provided and is of record.

A fourth flaw is the failure to recognize that Türkiye is a Hyper-Inflationary Economy. Specifically, Türkiye has a high rate of inflation, which inflation artificially increased the prices of the key inputs. This hyper-inflation has resulted in aberrational factor values, even if certain of the values were adjusted. Specifically, the Türkçe value of labor is of 2022 with inflator 1.1467; electricity, truck freight and Brokerage & Handling are of 2020 with inflator 2.36; Ocean insurance is of 2014 with inflator 4.58. (Preliminary Surrogate Values P.R. 88).

Plaintiff submits that the Department does not differentiate among sectors and products and presumes an even across the board level of inflation. This is not reasonable, particularly with things such as Ocean insurance and freight which are tempered by international pricing. The application of the inflators in a hyper-

12

inflationary economy results in significant distortions. It is clear that the hyperinflation of Türkiye has made the value of almost half of the factors aberrational. The assertion that a hyper-inflation does not affect the use of surrogate value is only when the hyper-inflation is not used in calculating the surrogate value. Here is obviously not the case. The Türkçe hyper-inflation was used for calculating surrogate value for multiple factors. At a bare minimum, the Department refused to consider the hyper-inflation and thus did not engage in its duty to ascertain the reliability of the record data.

In contrast, Bulgaria's data does not display the same flaws. Bulgaria is a member of the European Union and necessarily does not have high inflation.

Simply put, while any one flaw in Türkçe data would not disqualify the use of Türkçe data, in this case the Türkçe data has multiple flaws. Where, as here, we have two usable surrogate countries (Bulgaria and Türkiye) and one of these two surrogate countries does not have badly flawed data, the country without the flaw data should be used as the surrogate country.

In sum, Bulgaria's Data is superior, meets all of the other requirements, and should be the source of surrogate values. The Türkçe data is badly flawed as it is missing critical surrogate values. The Bulgarian data is complete. The Türkçe data is flawed as it does not contain key energy inputs. The Bulgarian data contains the key energy inputs. The Türkçe data included data significantly impacted by the hyper-inflationary economy in Türkiye, even if certain data was not affected. The Bulgarian data was not affected by hyper-inflation. The Türkçe data is simply not reliable.

In sum, the Türkçe data is badly flawed, and the Bulgaria is far superior. The Department erred when it used the inferior Türkçe data.

13

## III. CONCLUSION

This Court should reject the arguments presented in the response of the Defendant. The facts of record clearly establish that:

- The only POR data establishes that Bulgaria is a producer of identical merchandise. The out of POR data should not be used where the Department has POR data.
- The Department also has a preference to use identical production. The record establishes that Bulgaria produces identical, not comparable, merchandise.
- The Department also should not use Türkiye as a source of surrogate values as the data quality is inferior to that of Bulgaria.

Based on the foregoing, plaintiff submits that this court should remand this matter to the Department with instructions to reconsider the selection of the surrogate country and surrogate values.

                                                Respectfully submitted,

                                                /s/ David J. Craven

                                                David J. Craven
                                                Counsel to Tianjin Magnesium
                                                International Co., Ltd. and Tianjin
                                                Magnesium Metal Co., Ltd

                                                Craven Trade Law LLC
                                                3744 N Ashland
                                                Chicago, IL 60613
                                                (773) 709-8506
                                                David.craven@tradelaw.com

Date August 29, 2025